UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| P.K., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:13-cv-00211-WWE |
| | : | |
| HARTFORD ROMAN CATHOLIC DIOCESE | : | |
| CORP. and STEPHEN BZDYRA, | : | |
| Defendants. | | |

## MEMORANDUM OF DECISION ON DEFENDANT'S
## MOTION TO DISMISS AND TO STRIKE

This is an action against a priest and his diocese by a plaintiff who at all relevant times

was a minor.  Plaintiff alleges reckless battery (Count I), negligent battery (Count II) and

negligent infliction of emotional distress (Count IX) against defendant Bzdyra; and negligence

via respondeat superior (Count III), negligence via aided-in agency theory (Count IV), negligence

(Count V), negligent supervision (Count VI), negligent hiring and retention (Count VII),

recklessness (Count VIII) and negligent infliction of emotional distress (Count X) against

defendant Hartford Roman Catholic Diocese Corp. ("HRCDC").

Defendant HRCDC has moved to dismiss all of the counts against it for failure to state a

claim.  In the alternative, it has moved to strike certain paragraphs from plaintiff's complaint.

For the following reasons, defendant's motion to dismiss and to strike will be granted in part and

denied in part.

## BACKGROUND

In reviewing a motion to dismiss, the Court accepts the factual allegations of the

complaint as true and draws all reasonable inferences in favor of plaintiff.

Plaintiff is a resident of California.  Defendant Bzdyra is a resident of Connecticut.

Defendant HRCDC is principally organized and operated in Connecticut.

HRCDC recruited, ordained, educated, and supervised Bzdyra and assigned him to serve as a priest and pastor at various locations within the Diocese of Hartford.

HRCDC authorized and encouraged Bzdyra to meet with minors, including plaintiff, for the purpose of providing spiritual training, instruction, guidance and counsel. By assigning Bzdyra to act as a priest, HRCDC intended to represent to the general public, including plaintiff and his family, that Bzdyra was fit, qualified and competent in all respects to serve as a priest within the diocese and to provide instruction, guidance and counsel to minors like plaintiff.

Bzdyra, under the auspices and authority of HRCDC, traveled to California to meet with plaintiff. Between 1980 and 1983, Bzdyra performed lewd and lascivious acts upon plaintiff. On diverse dates, Bzdyra repeatedly sexually molested plaintiff. Bzdyra threatened and intimidated plaintiff so that plaintiff would not disclose Bzdyra's deviant acts, and he provided rewards and other inducements to plaintiff to prolong their relationship.

At all times relevant to this action, Bzdrya was an employee, agent or apparent agent of defendant, HRCDC. Bzdrya operated within and was aided by his agency relationship with HRCDC.

Prior to and during the times that Bzdrya sexually molested plaintiff, he corresponded with him and purported to provide him with spiritual guidance.

At all pertinent times, Bzdyra was assigned to the parish of St. Stanislaus in Meriden, CT and/or St. Francis in New Haven, CT. Plaintiff's family members were parishioners at St. Stanislaus. Bzdyra was a resident on premises controlled by the HRCDC and he was supervised as a priest by the HRCDC. The HRCDC knew or should have known that Bzdyra had a

propensity to have sexual contact with and sexually assault minors.  Moreover, HRCDC systematically covered up sexual misconduct by priests serving the diocese so as to endanger minor children like plaintiff.

The HRCDC failed to establish, maintain, and enforce a policy of investigating, reporting and removing priests engaged in sexual misconduct; instead it adhered to a practice and policy of discouraging the dissemination of information regarding the sexual misconduct of priests with minor children.

As a result of being molested by Bzdyra, plaintiff suffered physical injury, physical and mental pain and suffering, emotional pain and suffering, anxiety and depression.  Plaintiff has incurred and will continue to incur expenses related to counseling and therapy and lost earnings and diminished earning capacity, all to his loss and damage.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3

**Respondeat Superior**

HRCDC asserts that it cannot be held vicariously liable for defendant Bzdyra's conduct because his conduct was outside the scope and course of his employment with HRCDC.

"[U]nder the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment." Matthiessen v. Vanech, 266 Conn. 822, 839 (2003). "[T]o hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. . . . But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." Cornelius v. Department of Banking, 94 Conn. App. 547, 557 (2006).

"Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 207 (1990). Connecticut courts draw a distinction between unauthorized or misguided efforts by employees in furtherance of an employer's business - for which employers may be held liable, and abandonment of an employer's business - for which employers may not be held liable. Mullen. v. Horton, 46 Conn. App. 759, 767 (1997).

"In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is

4

motivated, at least in part, by a purpose to serve the employer." Harp v. King, 266 Conn. 747,

782-83 (2003); see also Restatement (Second), Agency § 228.

In Mullen v. Horton, the Appellate Court of Connecticut examined the line between mere

misguided efforts and abandonment of an employer's business. 46 Conn. App. at 764-771.

> Here, as in *Glucksman* and *Pelletier*, the trier of fact could reasonably have found
> that Horton's sexual relations with the plaintiff during their pastoral-psychological
> counseling sessions, were a "misguided effort" at psychologically and spiritually
> counseling the plaintiff, rather than an abandonment of the counseling. Just as the
> YMCA employee's assault on the basketball court in *Glucksman*, and the employee's
> assault on the customer who had littered in *Pelletier* represented extreme and clearly
> unauthorized methods of maintaining order and thereby furthering their employers'
> business, Horton's engaging in sexual contact with the plaintiff during counseling
> sessions also could represent an extreme and clearly unauthorized method of
> spiritually and emotionally counseling the plaintiff and thereby furthering the
> church's business.

Mullen, 46 Conn. App. at 767. The court distinguished the above cases from Brown v. Housing

Authority, 23 Conn. App. 624 (1990), where a mechanic left his job route, followed the

plaintiff's car, and attacked the plaintiff with a hammer, finding that the mechanic "necessarily

abandoned his employer's business to pursue and attack the plaintiff." Mullen, 46 Conn. App. at

769. Street brawling with random members of the public has nothing to do with maintaining

machines, even when travel is part of the job. There, the mechanic's violence was not

foreseeable because it was "in no way connected to the defendant's business." Id. Similarly, in

Gutierrez v. Thorne, 13 Conn. App. 493, 499 (1988), repeated sexual assaults by an employee

were held to have no connection to the defendant employer's business of training mentally

retarded persons regarding daily living skills. Finally, in Nutt v. Norwich Roman Catholic

Diocese, 921 F. Supp. 66, 71 (D. Conn. 1995), the District Court held that a priest's showing

pornographic films to young boys and then criminally sexually molesting them in out-of-town

motel rooms could not reasonably be viewed as a mere misguided effort at pastoral counseling. The priest had wholly abandoned his pastoral duties.

The location of the dividing line between the above sets of cases is significantly based on the foreseeability of the unauthorized conduct in question.  Inappropriate sexual relations between a psychological counselor and a client are somewhat predictable, as are physical altercations during a basketball game, or even in a retail store, where employees are instructed to prevent mischief on the premises.  Furthermore, a master does not escape liability simply because a servant's act is unauthorized.  Indeed, the Restatement (Second) of Agency § 245 provides:

> A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Connecticut courts dispute whether sexual molestation by a priest could, as a matter of law, result in vicarious liability to his employer.  At the summary judgment stage, this Court declined to rule in favor of a diocese based on a genuine factual dispute about the strength of the nexus between molestation and worship.  Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110, 118 (D. Conn. 1997).  While Connecticut courts have dismissed sexual molestation cases against churches as a matter of law, the Court agrees with the analysis of Judge Silbert in Nelligan v. Diocese:

> [I]n the nine years since Judge Covello initially ruled that, as a matter of law, sexual molestation could not be considered as being within the scope of a priest's employment, the number of reported allegations of sexual assaults by priests has risen so dramatically that one must wonder whether Judge Covello, and particularly those judges who followed Nutt in ruling on motions to strike, rather than motions for summary judgment, would be so quick to conclude that there could not possibly be a factual dispute over whether such molestation could take place within the scope of a priest's employment. A contemporary court cannot ignore, for example, the fact

that recent reports suggest that 'based on survey responses from 97 percent of dioceses (195 dioceses) and from 142 religious communities, representing approximately 80 percent of religions priests across the country ... the total number of priests with allegations of abuse was 4,392, representing approximately 4 percent of all priests in ministry between 1950-2002.' (citing John Jay College of Criminal Justice Report paid for by the U.S. Conference of Catholic Bishops).

Assuming that these reports are accurate, they would suggest the addition of facts that were not available to those judges who have been confronted with this issue in the past. This is not to say that these statistics would definitively establish that sexual abuse of minors is within the scope of a priest's employment, but rather than it can no longer be said, as a matter of law, that such conduct 'represents one of those exceptional cases in which the servant's digression from duty is so clear cut that the disposition of the case is a matter of law.' Mullen v. Horton, 46 Conn.App. at 770-71. This court, at least, is not prepared to conclude that an activity which might be undertaken by as many as four percent of an employer's employees is a clear cut 'digression from duty' as a matter of law.

2004 WL 574330 *2 (Conn. Super. Ct. Mar. 5, 2004).  Accordingly, plaintiff's respondeat superior claim will not be dismissed.

### Aided in Agency

HRCDC argues that Connecticut does not recognize the aided-in-agency theory of liability for intentional conduct.  This Court recently addressed the issue:

Plaintiff[] [relies] on the Restatement (Second) of Agency § 219(2), which provides that 'a master is not subject to liability for the torts of his servants acting outside the scope of their employment unless ... (d) the servant ... was aided in accomplishing the tort by the existence of the agency relation.' However, Connecticut courts have consistently declined to apply the doctrine of apparent authority in tort cases, notwithstanding the principles of agency set forth in the Restatement (Second). See Mullen v. Horton, 46 Conn.App. 759, 771–72, 700 A.2d 1377 (1997) ('[T]he doctrine ... hold[ing] a principle, who represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable ... has never been used in such a manner [in Connecticut].'); see also Beach v. Jean, 46 Conn. Supp. 252, 260, 746 A.2d 228 (1999) ('[I]n Connecticut, the doctrine of apparent authority is a principle of contract law or evidence rather than the law of torts.').

Jean-Charles v. Perlitz, 937 F. Supp. 2d 276, 286-87 (D. Conn. 2013).  Therefore, HRCDC's

motion to dismiss will be granted as to Count IV.

**Negligence and Recklessness Claims**

Defendant argues that plaintiff's recklessness and negligence claims should be dismissed because the complaint does not plausibly allege the existence of a duty to plaintiff.  Specifically, defendant contends that "an employer has no duty to control the conduct of an off-duty employee except when the complained-of conduct occurs on the employer's premises, utilizes a chattel of the employer's, and the employer knows or has reason to know that he can control the employee and recognizes the necessity of so doing."  Cannizzaro v. Marinyak, 139 Conn. App. 722, 729 (2012).

Plaintiff disputes that Bzdyra was off-duty when the conduct at issue occurred.  The Court  accepts the factual allegations of the complaint as true, and plaintiff alleges that Bzdyra's visits with him in California took place under the auspices and authority of HRCDC.

"[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case."  Lodge v. Arett Sales Corp., 246 Conn. 563, 572 (1998).

Plaintiff alleges that HRCDC knew or should have known that Bzdyra had a propensity to engage in sexual contact with minors and that he was a danger to the health and well being of minor children, including plaintiff.  If true, public policy dictates that failure by HRCDC to take reasonable measures to prevent abuse under theses circumstances should result in potential

liability to HRCDC.  Drawing all reasonable inferences in favor of the plaintiff, the Court finds

plaintiff's complaint plausibly alleges a duty running from defendant to plaintiff.  Accordingly,

defendant's motion to dismiss will be denied as to the negligence and recklessness counts.

**Motion to Strike**

Defendant argues that the Court should strike from the complaint references to other

priests and allegations of insufficiency in defendant's internal rules pertaining to clergy.

Specifically, defendant requests that allegations that defendant had "knowledge that many priests

within the diocese had a predilection for pedophilia" and/or "knowledge of the predilections of

priests within the diocese to pedophilia" and/or that "[t]he defendant Diocese systematically covered

up sexual misconduct by priests serving in the diocese" and/or that "[t]he HRCDC did not establish,

maintain, and enforce a policy of investigating, reporting and removing priests engaged in sexual

misconduct, but instead adhered to a practice and policy of discouraging the dissemination of

information regarding the sexual misconduct of priests with minor children" should be stricken as

they constitute immaterial, impertinent, or scandalous matter that does not support any legitimate

legal theory of recovery but could be inappropriately used to seek improper discovery.  See Fed. R.

Civ. P. 12(f).

It is well settled that a motion to strike will be denied "unless it can be shown that no

evidence in support of the allegation would be admissible."  Lipsky v. Commonwealth United

Corp., 551 F.2d 887, 893 (2d Cir. 1976).  Here, the Court finds that defendant's knowledge of

and response to other incidents of sexual misconduct by its employees may become admissible.

Indeed, "[u]sually the questions of relevancy and admissibility in general require the context of

an ongoing and unfolding trial in which to be properly decided."  Id.  The motion to strike will be

denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part.  Count IV is dismissed; but all other counts remain.

Dated this 11th day of September, 2014, at Bridgeport, Connecticut.


_____/s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE